UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
REBECCA MEEK-HORTON, et al., on behalf
of themselves and all others similarly situated,

                      Plaintiffs,         11 CV 6054 (RPP)

       - against -

                                   **AMENDED**
TROVER SOLUTIONS, INC. D/B/A        **OPINION AND ORDER**
HEALTHCARE RECOVERIES, et al.,

                      Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       On August 1, 2011, Plaintiff Rebecca Meek-Horton commenced this action on behalf of herself and others similarly situated ("Plaintiffs") against forty health care insurers that offer Medicare Advantage Plans ("MA Plans") ("Defendants") by filing a putative class action complaint in the Supreme Court of the State of New York, New York County. On August 29, 2011, Defendants filed a notice to remove the action from state court pursuant to the Class Action Fairness Act. See 28 U.S.C. § 1332(d).

       On October 7, 2011, an Amended Complaint was filed on behalf of Plaintiffs. Subsequently, Plaintiffs agreed to dismiss a number of Defendants from the action. The fifteen remaining Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, alternatively, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, Defendants' motion to dismiss is granted.

I.      **Background**

Plaintiffs allege that they are a class of Medicare-eligible individuals who enrolled in MA Plans and received medical benefits pursuant to Part C of the Medicare Program. (Am. Compl. ¶ 1; Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Mem.") at 1, ECF No. 95.) Plaintiffs also allege that they are a class of individuals who, as a result of bringing personal injury and wrongful death lawsuits in New York State courts, have received monetary settlements from third party tortfeasors. (Am. Compl. ¶ 1.)

Defendants are private health care insurers[1] that administer MA Plans. (Id.) Defendants have pursued, or are pursuing, reimbursement for medical benefits paid to Plaintiffs by placing liens upon the personal injury or wrongful death settlements received by Plaintiffs from third party tortfeasors. (Id.) Plaintiffs contest Defendants' right to do so, alleging that these reimbursement claims violate Section 5-335 of the New York General Obligations Law ("GOL"). (Id. ¶¶ 195, 198, 204, 207.) Plaintiffs' action seeks restitution of all monies wrongfully collected by Defendants and a permanent injunction "directing defendants to cease and desist from continuing to assert and collect liens, subrogation rights, and/or reimbursement rights" against anyone covered by a MA Plan who settles a New York personal injury or wrongful death claim. (Id. ¶¶ 204, 207.)

      A.      **The Medicare Advantage Program**

Medicare is a federally funded program established in 1965 as part of the Social Security Act that aims to provide medical care for individuals who (1) are more than 65 years of age, (2) have received Social Security disability benefits for at least 24 months, or (3) have end-stage

---

[1] Defendants also include agents of Medicare Advantage Organizations, such as reimbursement claims recovery contractors. (Oral Arg. Hr'g Tr. at 5-6, April 17, 2012 at 5-6.)

renal disease. See 42 U.S.C. § 1395c. Prior to 1980, Medicare served as the primary payer for those eligible to enroll in the program. In 1980, however, Congress attempted to curb the rising costs of the program by enacting the Medicare Secondary Payer Act ("MSPA"). In certain circumstances, the MSPA makes Medicare the "secondary payer" in relation to certain other sources, which are considered "primary payers." 42 U.S.C. § 1395y(b)(2)(A); see also Potts v. Rawlings Co., LLC, No. 11 CV 9071, 2012 WL 4364451, at *1 (S.D.N.Y. Sept. 25, 2012).

Under the MSPA, Medicare is prohibited from making a payment for an enrollee's medical benefits if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A); accord 42 C.F.R. § 411.32(a)(1). Should there be remaining expenses after the primary plan has provided payment, Medicare becomes the "secondary payer" and will cover the remaining balance. See N.Y. Life Ins. Co. v. United States, 190 F.3d 1372, 1374 (Fed. Cir. 1999). The statute also provides that

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate [Medicare] Trust Fund for any payment made by the Secretary [of the Department of Health and Human Services ("HHS")] under this subchapter with respect to an item or service if it is established that such primary plan has or had a responsibility to make payment with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii).

The MSPA provides that the United States "may bring an action against any or all entities that are or were required or responsible . . . to make payment with respect to the same item or service (or any portion thereof) under a primary plan." Id. § 1395y(b)(2)(B)(iii). Furthermore, the MSPA also provides the United States with a right of subrogation. Id. § 1395y(b)(2)(B)(iv)

3

("The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan").

This case involves benefits paid under the Medicare Advantage Program ("MA Program"), which is set forth in Part C of the Medicare Act ("Part C" or the "Medicare Advantage statute"), and more commonly known as "Medicare + Choice" or "Medicare Part C." 42 U.S.C. §§ 1395w-21–1395w-29; see also Potts, 2012 WL 4364451, at *2. The MA Program was enacted in 1997 and 2003 to provide an alternative to Medicare Parts A and B ("traditional Medicare") by allowing individuals to receive their Medicare benefits from privately managed healthcare insurers, known as Medicare Advantage Organizations ("MAOs"), instead of receiving their benefits directly from the federal government. See id. § 1395w-21(a)(1). Persons who choose to enroll in MA Plans administered by MAOs must be provided with the same benefits that are available to those enrolled in traditional Medicare. See id. § 1395w-22(a)(1)(A).

Whereas traditional Medicare operates as a fee-for-service plan in which providers directly bill the federal government for reimbursement for specific services performed, MAOs are paid a set monthly reimbursement rate based on a formula established by the Center for Medicare and Medicaid Services ("CMS"), pursuant to authority from the Secretary of Health and Human Services ("HHS"). See 42 U.S.C. § 1395w-23; 42 C.F.R. § 422.304. Medicare pays MAOs this set amount of money based on the health risk factors of their plans' enrollees, including their ages, disability statuses, genders, institutional statuses, and health statuses. Id. The MA Program, like traditional Medicare, contains a provision that makes MAOs the

secondary payers and third party entities, such as insurance policies and workers compensation plans, the primary payers.  See 42 U.S.C. § 1395w-22(a)(4) (discussed further infra).

**B.     New York General Obligations Law § 5-335(a)**

Plaintiffs argue that the MSPA does not govern this action because their claims do not concern a specific benefit determination arising under the Medicare Act.  (See Pls.' Mem. at 8-9.)  Instead, Plaintiffs assert that their claims are "rooted in traditional state law theories of relief, common law fraud, contract law, and violations of New York's statutory law, GOL § 5-335."  (Id.)  GOL § 5-335(a) states in relevant part that:

> When a plaintiff settles with one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a statutory right of reimbursement. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.
>
> Except where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.

Id. (emphasis added).  By its express terms, GOL § 5-335 does not apply to those benefit providers who have a statutory right under federal or state law to be reimbursed for benefits provided to settling plaintiffs in personal injury or wrongful death actions.  Id.

Case 1:11-cv-06054-RPP   Document 109   Filed 01/02/13   Page 6 of 13

**II.     Legal Standards**

Defendants contend that the Court has three grounds to dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, or alternatively under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The "standards for dismissal under [Rule] 12(b)(6) and 12(b)(1) are substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction challenges the district court's statutory or constitutional power to hear Plaintiffs' state law claims. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. at 113.

In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must have alleged "enough facts to state a claim to relief that is plausible on its face." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Consideration of a Rule 12(b)(6) motion is limited to the factual allegations in the complaint and documents either attached to or incorporated by reference in the complaint. Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 392–23 (S.D.N.Y. 2010) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

"Under the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, '[w]here a state statute conflicts with, or frustrates, federal law, the former must give way.'" Potts, 2012 WL 4364451, at *7 (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993). "'Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose.'" Id. (quoting Altria Group, Inc. v. Good, 555 U.S. 70, 76

6

(2008)). "If the statute contains an express preemption clause," the interpreting court should "focus on the plain wording of the clause." CSX Transp., 507 U.S. at 664.

**III.   Discussion**

Defendants seek to dismiss the Amended Complaint on three grounds. Defendants argue that (1) Plaintiffs have not exhausted their administrative remedies under the Medicare Act, 42 U.S.C. §§ 1395-1395ggg and therefore the claims must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (2) the Medicare Act preempts Plaintiffs' state law claims; and (3) Plaintiffs fail to state a claim upon which relief may be granted. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 1, ECF No. 87.)

The dispositive issue in this case is whether Congress, in enacting the Medicare Advantage Program, intended to provide MAOs with a statutory right of reimbursement for medical benefits paid to an enrollee who subsequently recovers a settlement from a third party tortfeasor. Specifically, this case turns on the Court's interpretation of the secondary payer provision of Medicare Part C, 42 U.S.C. § 1395w-22(a)(4), and whether it provides a statutory right of reimbursement for MAOs that preempts the provisions of GOL § 5-335.[2]

Plaintiffs argue that MAOs are a creation of Medicare Part C and that the statute does not grant MAOs a statutory right "to recover accident-related payments made on behalf of Medicare Advantage beneficiaries." (Pls.' Mem. at 2.) Rather, Plaintiffs contend that the statute "merely authorizes the private insurer to include in its insurance contract a right of subrogation against an

---

[2] As quoted supra at 5, GOL § 5-335(a) states in relevant part that:

> Except where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party

Id. (emphasis added).

insured's recovery from a third party for money previously paid for the insured's medical care." (Id.)  Therefore, Plaintiffs argue that MAOs have no statutory right of reimbursement under either federal or state law, and accordingly, MA Plans are subject to the provisions of GOL § 5-335.  (Id.)

In support of this argument, Plaintiffs point to the difference in language employed by Congress in the MSPA concerning traditional Medicare compared with that used to describe the secondary payer provisions of Medicare Part C.  (Tr. at 34-35.)  In delineating the parameters of traditional Medicare, Congress provides in the MSPA that:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added).  In contrast, the secondary payer provision of Medicare Part C, which applies to MAOs administering MA Plans, states:

> Notwithstanding any other provision of law, a [MA] organization may (in the case of the provision of items and services to an individual under a [MA] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2)) of this title charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section--
>
> **(A)** the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> **(B)** such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

§ 1395w-22(a)(4) (emphasis added).  Plaintiffs contrast the "shall" language that appears in traditional Medicare, § 1395y(b)(2)(B)(ii), with the "may" language that appears in Medicare

8

Part C, § 1395w-22(a)(4), to assert that "if [Congress] wanted to have these Medicare Advantage plans to be at the same equal footing as the Traditional Medicare plans and have a mandatory reimbursement, they would have said so . . . they didn't." (Tr. at 34-35.)

Plaintiffs' argument is defeated by the plain language of the governing statute. In Part C of the Medicare Act, Congress expressly preempted all but a limited number of State laws, and GOL § 5-335 does not fall within the limited category of State laws exempted from preemption. See § 1395w-26(b)(3). Indeed, the Medicare Act states in relevant part that "the standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under [Part C]." Id. The regulations promulgated by the Secretary of HHS contain similarly explicit language, stating that "the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans." 42 C.F.R. § 422.108(f).

Other courts have interpreted the preemption provision of Medicare Part C broadly, see Uhm v. Humana, Inc., 620 F.3d 1134, 1148-1150 (9th Cir. 2011); Phillips v. Kaiser Foundation Health Plan, No. 11 CV 2326, 2011 WL 3047475, at *6 (N.D. Cal. July 25, 2011), and another court in this District already has specifically ruled that Part C preempts GOL § 5-335, see Potts, 2012 WL 4364451, at *7-11. In Potts, a case in this District involving "similar factual allegations against largely the same defendants on behalf of substantially the same class," 2012 WL 4364451, at *3 n.1, Judge Paul Oetken rejected plaintiffs' argument, made here as well, that the question of whether or not the Medicare Act preempted GOL § 5-335 turned on whether or not Part C creates a private right of action for MAOs, id. at *8. Judge Oetken found the private right of action issue "immaterial" to the preemption question, id., and instead held that "under

9

the plain language of the express preemption provisions of the Medicare Act and its accompanying regulations, . . . to the extent that GOL § 5-335 would eliminate a MA[Os] right to seek reimbursement, the statute is preempted by the Medicare Act," id. at *8, 11.

Similarly, in Uhm, the Ninth Circuit analyzed both the language and legislative history of the Medicare Part C preemption provision and found that Congress provided no indication that it "intended to save any common law claims" through a savings clause in the Medicare Act.[3]  Uhm, 620 F.3d at 1153; see also Pacificare of Nevada, Inc. v. Rogers, 266 P.3d 596, 597-98 (Nev. 2011) (incorporating the Ninth Circuit's analysis in Uhm and holding that the Medicare Act preempted Nevada's unconscionability of contract doctrine).  In support of this interpretation, the Ninth Circuit noted that in 2003 Congress amended the Part C preemption provision in a manner that appears to broaden the scope of preemption.  The court observed that the previous provision was more narrowly tailored to preempt only state standards and regulations that were "inconsistent" with the federal standards provided for in the Medicare Act.  See 42 U.S.C. § 1395w-26(b)(3) (2000).  The 2003 amendment, however, broadens the scope of preemption to include all state laws and regulations with a small carve out for State licensing laws or State laws relating to plan solvency.  See § 1395w-26(b)(3) (2003) (emphasis added); see also H.R. Rep. No. 108-391, at 557 (2003).

In sum, Plaintiffs have exclusively plead their claims under a state law, GOL § 5-335, and argued that their claims do not "arise under" the Medicare Act because they "do not seek benefits or reimbursement for benefits," (Pls.' Mem. at 5; see also id. at 6-13).  Given that the sole alleged basis for Plaintiffs' claims, GOL § 5-335, is expressly preempted by the "plain

---

[3] While Uhm deals with Medicare Part D, the preemption provision of Part D directly incorporates the express preemption provision contained in Part C.  See 42 U.S.C. § 1395w-112(g).

wording" of federal law, 42 U.S.C. § 1395w-26(b)(3), and agency regulation, 42 C.F.R. § 422.108(f), this action contains no claims upon which relief may be granted by this Court. See CSX Transp., 507 U.S. at 664. Accordingly, Plaintiffs' claims are dismissed pursuant to Rule 12(b)(6).[4] (See Compl. ¶¶ 3-8.)

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted without prejudice.

IT IS SO ORDERED.

Dated: New York, New York
January 2, 2013

Robert P. Patterson, Jr.
U.S.D.J.

---

[4] In Potts, Judge Oetken went a step further and considered the nature of the Potts plaintiffs' claims. He held that "claims concerning reimbursement of secondary benefits are 'inextricably intertwined' with claims for benefits," 2012 WL 4364451, at *5, and that "Plaintiffs cannot circumvent the exhaustion requirement by arguing that their claims arise under GOL § 5-335, and not the Medicare Act, because the Medicare Act preempts GOL § 5-335 in this case, id. at *11. Accordingly, Judge Oetken assessed whether plaintiffs had properly exhausted their administrative remedies before filing their claims in federal court. Id. at *4-6. Finding that plaintiffs had failed to do so, he dismissed the case for lack of subject matter jurisdiction. Id. at *11. Given that the action was resolved on procedural grounds, Judge Oetken held that the "Court need not" reach the substantive issue of whether Medicare Part C contains "an express or implied private right of action for MA[Os] to enforce reimbursement rights." Id. at *9. Moreover, Judge Oetken noted that plaintiffs' arguments conflated the question of whether the MAO had a private right of action under federal law to recover benefits paid with the separate question of whether plaintiffs can challenge a benefits determination, here the MAOs' attempt to recover benefits, without administratively exhausting their claims first. Id. (quoting Phillips, 2011 WL 3047475, at *7 n.12).

**Copies of this Order were sent to:**

Plaintiffs' Lead Counsel

>Howard R. Schatz
>Silbowitz, Garafola, Silbowitz, Schatz & Frederick, LLP
>25 West 43rd Street, Suite 711
>New York, NY 10036
>(212)-354-6800
>Fax: (212)-354-3737
>Email: hschatz@nylawyer.net

Counsel for Defendants Group Health Incorporated, Inc.; HIP of New York, Inc.; HIP of Greater New York, Inc.; and The Rawlings Company, LLC:

>Richard W. Cohen and Uriel Rabinowitz
>Lowey Dannenberg Cohen & Hart, P.C.
>White Plains Plaza
>One North Broadway, Suite 509
>White Plains, NY 10601-2310
>(914) 997-0500
>Fax: (914) 997-0035

Counsel for Defendants First Recovery Group, LLC; American Progressive Life & Health Insurance Company of New York; HealthFirst, Inc.; and WellCare Health Plans, Inc.

>Harold N. Iselin
>Greenberg Traurig LLP
>54 State Street, 6th Floor
>Albany, NY 12207
>(518) 689-1400
>Fax: (518) 689-1499

Counsel for Defendants United Healthcare of New York, Inc.; Oxford Health Plans (NY), Inc.; Ingenix, Inc.:

>Charles E. Bachman
>O'Melveny & Myers
>Times Square Tower
>7 Times Square
>New York, NY 10036
>(212) 326-2000
>Fax: (212) 326-2061

Counsel for Trover Solutions, Inc.:

    Shawn J. Rabin
    Susman Godfrey
    560 Lexington Ave., 15th Floor
    New York, NY 10022
    (212) 336-8330
    Fax: (212) 336-8340

Counsel for Defendants Empire HealthChoice Assurance, Inc.; and Meridian Resource Co., LLC:

    Kathleen Taylor Sooy
    1001 Pennsylvania Ave., NW
    Washington DC 20004
    (202) 624-2500
    Fax: (202) 628-5116